UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN ROBERT,

    Plaintiff,

v.   Case No. 1:22-cv-522

Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for supplemental security income (SSI).

The present case involves plaintiff's application for SSI filed on June 5, 2019. PageID.60. Plaintiff identified her disabling conditions as spinal stenosis, two herniated discs, depression, and hypertension. PageID.308. Prior to applying for DIB, plaintiff attended two years of college and had past relevant work as a landscape gardener, small business owner, and cleaner/housekeeper. PageID.70, 309. An administrative Law Judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on February 25, 2021. PageID.60-73. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

### I. LEGAL STANDARD

The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of June 5, 2019. PageID.62. At the second step, the ALJ found that plaintiff had severe impairments of degenerative disc disease of the cervical spine, essential hypertension, and left shoulder degenerative joint disease. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.64.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally and frequently lift and carry up to ten pounds, stand and/or walk with normal breaks for up to about six hours in an eight-hour workday and can sit with normal breaks for about six hours in an eight-hour workday. The claimant can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, and occasionally reach overhead with the left upper extremity.

PageID.65. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.70.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.71-72. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, light work in the national economy such

4

as information clerk (20,000 jobs), office helper (25,000 jobs), and electronics worker (25,000 jobs). PageID.71-72. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from June 5, 2019 (the date she filed the application) through February 25, 2021 (the date of the decision). PageID.72-73.

### III. DISCUSSION

Plaintiff raised three errors.

**A. Whether the ALJ erred by failing to resolve inconsistencies and complete the analysis required by SSR 96-9p?**

Plaintiff contends that the ALJ did not properly evaluate her ability to balance in violation of SSR 96-9p (*Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*) (S.S.A. July 2, 1996), 1996 WL 374185. The ALJ addressed this limitation as follows:

> The claimant alleges disability as a result of spinal stenosis, two herniated discs (C4 and L5), depression, hypertension, PTSD, arthritis, and high cholesterol (Exhibit 1A; 3A). She further asserts these conditions limit her ability to lift, squat, bend, stand, walk, kneel, climb stairs, remember, complete tasks, concentrate, understand, and follow instructions (Exhibit 10E/6). . . .
>
> During a visit in early October 2020, the claimant endorsed increased shoulder weakness (Exhibit 19F/2). However, later in October 2020, the claimant endorsed being back to normal and swimming for exercise (Exhibit 21F/27). She added rarely taking the prescribed Tramadol. An x-ray of the right shoulder showed degenerative and postoperative appearance with no acute findings (Exhibit 21F/30). An x-ray of the left shoulder showed mild degenerative change of AC joint with no acute findings (Exhibit 21F/32).
>
> The claimant is further treated for hypertension medically, but has not required hospitalization or emergent crisis treatment. This severe impairment does not preclude all work activity, but supports she is limited to less than the full range of light work. While the claimant has not undergone left shoulder surgery or required cervical spine intervention, the combined symptoms support she can lift can carry up to ten pounds occasionally and frequently. She can stand and/or walk for up to six hours and sit up to six hours in an eight-hour workday. The degenerative changes of the left shoulder with reported symptoms of repeated

5

> lifting support she can no more than occasionally reach overhead with the left upper extremity. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but the combination of her cervical spine symptoms and left upper extremity symptoms support she cannot climb ladders, ropes, or scaffolds.

PageID.66-67.

Plaintiff contends that "the Sixth Circuit and SSR 96-9p requires the ALJ to go beyond just finding 'occasional balancing' as the ALJ erred and did in this instance." Plaintiff's Brief (ECF No. 13, PageID.1350). Plaintiff points out that SSR 96-9p states, " 'if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base.' SSR 96-9p." *Id*. Plaintiff also cites *Peek v. Astrue*, No. CIV.A.10-40-GWU, 2010 WL 3892214 (E.D. Ky. Sept. 29, 2010) which states:

> SSR 96–9p indicates that "if an individual is limited in balancing only on narrow, slippery or erratically moving surfaces, this would not, by itself, result in significant erosion of the unskilled sedentary occupational base." SSR 96-9p, p. 10. The Ruling goes on to state that "if the individual is limited in balancing even when standing or walking on level terrain, there may be significant erosion of the unskilled sedentary occupational base." SSR 96-9p, p. 10. For this reason, the Ruling notes that "it is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base." SSR 96-9p, p. 10. In the present action, the ALJ only indicated a restriction concerning "occasional" balancing without further clarifying the limitation and the plaintiff argues that this finding falls short of the requirements of SSR 96-9p.

*Peek*, 2010 WL 3892214 at *4.

SSR 96-9p refers to balancing as one of the "Nonexertional Limitations and Restrictions" to be considered in evaluating individuals who can perform less than a full range of sedentary work:

> Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. In the SCO [Selected Characteristics of Occupations], "balancing" means maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces. If an individual is limited in

6

> balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base. However, if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base. It is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base. Consultation with a vocational resource may be appropriate in some cases.

SSR 96-9p, 1996 WL 374185 at *7.

SSR 96-9p does not apply to plaintiff because she is not limited to sedentary work. As discussed, the ALJ determined that plaintiff can perform a limited range of "light work as defined in 20 CFR 416.967(b)". PageID.65. As this Court explained in *Abraham v. Commissioner of Social Security*, No. 1:08-cv-117, 2008 WL 4738333 (W.D. Mich. Oct. 24, 2008):

> The stated purpose of SSR 96-9p is "[t]o explain the Social Security Administration's policies regarding the impact of a residual functional capacity (RFC) assessment for less than a full range of sedentary work on an individual's ability to do other work." This ruling provides guidelines to ALJs for evaluating a claimant's ability to do less than a full range of sedentary work.
>
> Defendant points out that SSR 96-9p is irrelevant because the ALJ found her capable of performing light work, and SSR 96-9p relates only to claimants who can perform only sedentary work. The court agrees with defendant that SSR 96-9p addresses the ALJ's evaluation of claimant limited to sedentary work, rather than to a claimant capable of performing light work.

*Abraham*, 2008 WL 4738333 at *3. For all of these reasons, plaintiff's claim of error is denied.

> **B. Whether the ALJ's analysis of the residual functional capacity (RFC) was deficient and contrary to the evidence, including the opinions of the plaintiff's treating source pursuant to 20 C.F.R. § 404.1520(c)?**[1]

Plaintiff contends that the ALJ failed to properly address the opinions of plaintiff's treating source, Dr. Shoeck. Plaintiff's Brief at PageID.1351. For claims filed on or after March

---

[1] The Court notes that the applicable standard for evaluating medical opinions in an SSI case appears in 20 C.F.R. § 916.920c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). This mirrors the standard applicable in disability insurance benefits in 20 C.F.R. § 404.1520c.

7

27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." *Id*. at § 416.920c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors. *See id*. at § 416.920c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

*Id*. at § 416.920c(b)(2).[2] If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. *Id*. at § 416.920c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not

---

[2] The regulations explain "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations explain "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(2).

8

administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." *Id*. at § 416.920c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

The gist of plaintiff's claim is that,

The ALJ found Dr. Schoeck's opinions unpersuasive, but did not properly articulate the level of "supportability" and "consistency" with the record as directed by 20 C.F.R. § 404.1520c [sic]. We contend Dr. Schoeck's opinion is not only consistent with and supported by the medical evidence of record, but more so than the other opinions of record.

Plaintiff's Brief at PageID.1352.

The ALJ addressed Dr. Shoeck's opinion as follows:

In November 2020, the claimant's primary care physician, Matthew Schoeck, M.D., completed a physical conditions questionnaire (Exhibit 23F). Dr. Schoeck noted treating the claimant since December 2016 every 6 months. Notably, the claimant was incarcerated for approximately two years from 2017 to 2019. Dr. Schoeck opined the claimant is likely to be off task 20% of the workday due to symptoms, can pay attention and concentrate for less than 30 minutes, and is likely to be absent four plus days per month. Dr. Schoeck added the claimant can lift and carry up to ten pounds occasionally and 20 pounds rarely, sit for less than one hour total, and stand and/or walk for one hour total with the need to sit/stand at will during an eight-hour workday. Dr. Schoeck further opined the claimant can rarely reach overhead bilaterally, occasionally handle bilaterally, frequently feel bilaterally, and rarely push and pull bilaterally. Dr. Schoeck added the claimant can continuously use foot controls bilaterally, occasionally climb ramps and stairs, kneel, crouch, crawl, and rarely climb ladders and scaffolds, balance, and stoop. Additional limitations including never being exposed toe xtreme [sic] cold, occasionally working around unprotected heights and moving mechanical parts, frequently operate a vehicle and being able to have continuous exposure to humidity an [sic] wetness, pulmonary irritants, extreme heat, and

9

> vibrations (Exhibit 23F).  I do not find Dr. Schoeck's opinion persuasive as it is not consistent with his own physical findings during examinations or the record as a whole.  Dr. Schoeck does not offer any explanation for time off task, absenteeism, or reduced concentration.  Rather, Dr. Schoeck's work preclusive limitations are conclusory and inconsistent with the claimant's reports of improvement following epidural steroid injections, her ability to engage in consistent exercise, and lack of emergent treatment or surgical intervention.  While Dr. Schoeck is a treating physician and likely has an understanding of her impairments and how they affect her daily activities, his more recent examination in September 2020 indicates the claimant's cervical radiculopathy is mostly resolved status post Medrol (Exhibit 13F/7; 19F/31).  Accordingly, I do not find Dr. Schoeck's opinion persuasive as it is not consistent with the record as a whole.
>
> In November 2020, Dr. Schoeck also completed a statement relating to the claimant's psychological conditions (Exhibit 24F).  Dr. Schoeck assigned a fair prognosis and opined the claimant's ability to understand, remember, or apply information is moderately limited; her ability to interact with others is mildly limited; her ability to concentrate, persist, or maintain pace is markedly limited, and her ability to adapt or manage oneself is not limited.  Dr. Schoeck added the claimant's short and long term memory is mildly limited, her ability to understand and carry out detailed but uninvolved wirten [sic] or oral instructions is moderately limited, can maintain attention and concentration for less than 30 minutes before requiring a break, and would be able to maintain regular attendance and be punctual within customary tolerances, but further opines she will be absent one day per month due to psychological and four + due to physical and also off task 20% of the workday (Exhibit 24F).  I do not find this opinion persuasive as it is inconsistent with the record as a whole including Dr. Schoeck's own mental status examinations which have been repeatedly unremarkable (Exhibit 8F/3, 10, 16, 23, 29; 19F/4, 24, 28, 46-47).  Examinations note intact immediate and long-term recall and in no way support marked limitations as opined by Dr. Schoeck.  Furthermore, Dr. Schoeck is not known to specialize in psychological medicine nor do his progress notes refer the claimant for mental health treatment. The claimant denied participation in mental health services and the record does not support emergent crisis treatment or inpatient psychiatric care.  Accordingly, I do not find Dr. Schoeck's opinion persuasive or consistent with the record as a whole.

PageID.69-70.

With respect to the mental impairments, the Court concludes that the ALJ's decision is supported by substantial evidence.  Plaintiff has not provided a meaningful argument on this issue, other than to point out that "at an evaluation with Stephanie Huizinga, LMSW, she specifically mentioned that the Plaintiff appeared to have limited coping skills for managing her emotions.

10

PageID.500." Plaintiff's Brief at PageID.1353. "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).[3]

With respect to the physical impairments, the ALJ articulated reasons to support his findings as Dr. Schoeck's restrictions related to time off task, absenteeism, and reduced concentration. However, the ALJ did not articulate reasons to discount the doctor's limitations related to the cervical radiculopathy or identify which limitations were related to this condition. On September 14, 2020, Dr. Schoeck stated that plaintiff's chronic cervical radiculopathy was "[r]esolved for the most part sp medrol." PageID.937. However, there is no indication as to what was resolved by the medication. For example, in his treating source statement dated about two months later on November 12, 2020, Dr. Schoeck found that plaintiff had lifting and carrying restrictions related to "CT cervical spine (11/11/19) – DDD [degenerative disc disease], foraminal narrowing." PageID.1110. These restrictions (that plaintiff can rarely lift 20 pounds and occasionally lift 10 pounds) were not consistent with the ALJ's finding that plaintiff could perform

---

[3] In reaching this determination, the Court notes the ALJ's conclusion that Dr. Schoeck "is not known to specialize in psychological medicine" adds nothing to the analysis. Dr. Schoeck has an M.D. and is qualified to treat mental conditions. As this Court stated in *Antes v. Commissioner of Social Security*, No. 1:12-cv-1188, 2014 WL 1366465 (W.D. Mich. March 31, 2014):

> The Magistrate Judge also properly disagreed with the ALJ's rejection of Dr. Simmons' opinions regarding Plaintiff's depression and anxiety on the grounds that Dr. Simmons was not a mental health specialist and never referred Plaintiff to a mental health specialist (R & R at 15). The Magistrate Judge noted that "as an M.D. licensed to practice medicine in Michigan, Dr. Simmons is qualified to treat both physical and mental conditions" (*id.*, citing MICH. COMP. LAWS § 333.17001(f); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987) (a duly licensed physician under the laws of most states, can practice and render psychiatric services, *i.e.*, prescribe psychotropic medication, conduct psychotherapy, etc.); *Bushor v. Comm'r of Soc. Sec.*, No. 1:09-cv-320, 2010 WL 2262337 at *10, n. 4 (S.D. Ohio Apr.15, 2010); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir.1995).

*Antes*, 2014 WL 1366465 at *2.

11

light work (lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds", 20 C.F.R. § 416.967(b)).

An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985). Here, the Court cannot trace the path of the ALJ's reasoning for rejecting Dr. Shoeck's opinion regarding restrictions related to plaintiff's chronic cervical radiculopathy and degenerative disc disease. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner will be directed to re-evaluate plaintiff's restrictions related to the cervical radiculopathy and degenerative disc disease.

> **C.    Whether the appointment of Andrew Saul as Commissioner of the Social Security Administration, removable only for cause, violates separation of powers. Accordingly, the decision by the AAJ's [sic] who derive their authority from Mr. Saul, was constitutionally defective?**

Finally, plaintiff's claim that the ALJ's decision was constitutionally defective is without merit. In *Johnson v. Commissioner of Social Security*, No. 1:20-cv-1223, 2022 WL 4376592 (W.D. Mich. Sept. 22, 2022), this Court rejected plaintiff's argument for the reasons set forth in *Boger v. Kijakazi*, No. 1:20-CV-00331-KDB, 2021 WL 5023141 (W.D.N.C. Oct. 28, 2021):

> In rejecting a similar argument, one court explained:
>
>> The Court first finds that Commissioner's final decision was not constitutionally defective. Recently, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Supreme Court held that where an unconstitutional statutory removal restriction exists, a

12

> plaintiff seeking relief on that basis must show that the restriction caused his alleged harm. In *Collins*, the Court reasoned that the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the . . . method of appointment" and that "the unlawfulness of [a] removal provision" does not strip [an official] of the power to undertake the other responsibilities of his office[.]" The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void." *Id*. at 1787,1788 n. 23. In this case, Plaintiff, as in *Collins*, grounds his constitutional challenge only on the relevant removal restriction not on the propriety of the Commissioner's appointment and offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits. The Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision. However, *Collins* expressly rejects this view. *Id*. Therefore, the final decision of the ALJ is not constitutionally defective.
>
> *Boger v. Kijakazi*, No. 1:20-CV-00331-KDB, 2021 WL 5023141 at *3 (W.D.N.C. Oct. 28, 2021) (footnote omitted). Plaintiff has offered no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of her applications for benefits. Accordingly, this claim of error is denied.

*Johnson*, 2022 WL 4376592 at *7.

As in *Johnson* and *Boger*, plaintiff has not shown any connection between the unconstitutional removal restriction and the denial of her application for benefits. Accordingly, plaintiff's claim of error is denied.

### IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate plaintiff's restrictions related to the cervical radiculopathy and degenerative disc disease. A judgment consistent with this opinion will be issued forthwith.

Dated:  September 20, 2023 /s/ Ray Kent  
RAY KENT  
United States Magistrate Judge